No. 29,562.

ROY CROW, *Appellant*, v. ANNA FLOSS SIMON, *Appellee*.

(296 Pac. 718.)

Opinion filed March 7, 1931.

*Scott Pfuetze*, of Phillipsburg, *Carl E. Sanden, Roland M. Anderson, Loren H. Laughlin* and *Bernard S. Gradwohl*, all of Lincoln, Neb., for the appellant.
*A. W. Relihan* and *T. D. Relihan*, both of Smith Center, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This case involves the validity of a contract made between Sarah Maude Crow and her sister, Anna Floss Simon, providing for the care, nursing and proper maintenance of Mrs. Crow as long as she might live, and also including services previously rendered by Mrs. Simon for Mrs. Crow. For all this service Mrs. Simon was to receive $3,000. A note for that amount was executed by Mrs. Crow in favor of Mrs. Simon on October 1, 1929, payable sixty days after date with interest from maturity at six per cent per annum. Upon the conclusion of the testimony the court sustained the validity of the note and the contract which were attacked for lack of capacity to make a contract, the exercise of undue influence upon Mrs. Crow, and lack of consideration. The plaintiff appeals.

The plaintiff, Roy Crow, was the husband of Sarah Maude Crow, who died soon after the contract was made. She had inherited property from her father, James Van Allen, who died intestate more than fifteen years before this action was begun, leaving as his sole heirs his widow and daughters, Mrs. Simon and Mrs. Crow.

Mrs. Van Allen became the owner of one-half of the property left by her husband, and the remaining half was the property of Mrs. Simon and Mrs. Crow. It appears that a contract between the widow and her two daughters was made in which the widow was given the whole use and possession of all the lands of the estate while she lived, the consideration being that her two daughters would have all the interest in the land when Mrs. Van Allen died. There had been litigation between the daughters as to their rights in the land in the nature of a partition suit, which was tried in the district court and has been brought by appeal to this court, but has not yet been submitted for decision. Mrs. Crow was sick with an incurable disease. She had been abandoned and deserted by her husband, the plaintiff, and there is testimony to the effect that she was unable to take care of herself and desired to make provision for a home and for attention and care while she lived. The contract in question was entered into October 1, 1929, in which it was agreed that Mrs. Simon should provide for her care and support in the future for a consideration of $3,000, and a note for that amount was executed at the time the contract was made. The material parts of that contract are:

"Witnesseth, that, whereas, there has been certain litigation pending between the parties hereto, and whereas, the said first party is indebted at the present time to the said party of the second part for services rendered said first party by the second party for care, nursing and keeping, and whereas, the physical condition of the said first party is such that it is necessary and she is desirous of securing care, nursing and proper maintenance for an indefinite period.

"Now, therefore, it is hereby mutually agreed between the parties hereto as follows: That for and in consideration of the covenants and agreements and things to be done and performed by the said party of the second part and the settlement of all differences and litigation between the parties hereto, the said party of the first part agrees to pay to said party of the second part the sum of $3,000, the same to be paid from and out of the proceeds of the sale of certain real estate which she inherited from C. J. Van Allen and which is now being partitioned in the district court of Phillips county, Kansas, in case number 7515.

"The said party of the second part, in consideration of the covenants and agreements made by said party of the first part and the payment of the sum above mentioned, hereby covenants and agrees with said party of the first part that she will properly care for, look after, and maintain during the remainder of her natural life, the said party of the first part. Giving to her, during said time, such care, food, nursing and medical attention as she may require, and to provide a good and sufficient home for the said party of the

first part so long as she may live, and said second party hereby further agrees that said payment above mentioned shall also be in full settlement of any claim which she may have for services rendered the first party up to this date."

Appellant contends that the contract and note are void because of the incapacity of Mrs. Crow to make such a contract; also, that there is a failure of consideration, that undue influence was exercised over her, and that it is an injustice to the plaintiff that the amount of $3,000 should be paid for such services as were rendered by Mrs. Simon for her sister. As to the capacity of Mrs. Crow to make a contract, there is testimony that she was seriously sick when the contract was made. She was suffering with diabetes and had been for a year or more prior to the making of the contract with defendant. She had gone to a hospital in Kansas City and was treated there for about a month without improvement, and then went back to Phillipsburg and to the home of Mrs. Simon, and was cared for until her death. She had expressed a desire to settle a controversy with her sister which had been carried into court and decided against her in the district court, and also to have a home with and be cared for by her sister. While in the sister's home she sent for a lawyer, who came and conferred with her with respect to the making of a contract, and after she indicated to him the matters and things to be embodied in the contract, her lawyer went to his office and prepared the contract and note. The testimony of an attending doctor was that while she was a very sick woman she understood ordinary business transactions and was as competent during her last days to carry on business as she ever had been. A nurse who was with her at the time the contract was made testified that Mrs. Crow's mind was clear, as clear as anybody's, every day. That nurse also testified that Mrs. Crow asked her to write a note to the effect that she wanted to drop the suit then pending between her and her sister as her hands were so swollen she could not handle a pen and that Mrs. Crow dictated the letter word for word just as it was written. It reads as follows:

"To whom it may concern: Sarah Maude Crow does not want to carry the partition suit to the supreme court, she wishes to abide by the decision of the district court of Phillips county, which was decided September 24, 1929. This case being fully settled between the parties."

She caused the writing to be witnessed by the writer and another. There was other testimony supporting the finding of mental capacity.

The claim of undue influence was not established by the evidence. It was not shown that Mrs. Simon dominated Mrs. Crow or was active in procuring her to make the contract. Mrs. Crow selected the attorney to advise her about the transaction, she conferred with him alone, and directed in general terms what should be written into it. When it was prepared by her attorney in his office, he returned and read it aloud to her. She was satisfied with the document, saying she wanted nothing added to or taken out of the contract. Under the evidence the court had no substantial basis for a finding of undue influence. As to what constitutes undue influence, see *Ginter v. Ginter,* 79 Kan. 721, 101 Pac. 634.

It is hardly open to question that there was sufficient consideration for the contract. The services which had been rendered and were to be rendered sufficiently met that requirement. It is said that the amount to be paid for the services was unconscionable and should be held void. It is true that Mrs. Crow lived but a short time after the contract was made, but no one knew how long she might live nor how burdensome the services might become. Mrs. Simon had undertaken not only to give her care and maintenance during her life, but also was to provide nursing and medical care, and the expense for the latter might have exceeded the amount of the note. There was testimony that persons afflicted with the disease suffered by Mrs. Crow might die suddenly or they might linger for several years. Her condition was such that she required constant attention from doctors and nurses as well as that rendered by her sister. In view of the situation that confronted the parties and the obligations assumed, it cannot be said that the contract is lacking in consideration or should be regarded as unconscionable in character. (*Webster v. Camp,* 107 Kan. 235, 191 Pac. 284, and cases therein cited.)

Finding no error in the record, the judgment of the trial court is affirmed.